A testatrix left the principal part of her large fortune to religious and charitable societies connected with the Catholic Church, in which she was brought up, to the exclusion of collateral relatives, who were her heirs, but for whom she had little affection or regard. She was a woman of fair intelligence, but humble origin, and little education. *Held*, that the mere fact that during life she was not known as a devout or religious woman, and sometimes used profane and irreligious language, was not sufficient to establish undue influence which would invalidate the will.

Proceedings for the probate of the contested will of Mary Johnson, deceased. Probate granted.

Alexander & Green and Frederick R. Coudert, for proponent.

Rastus S. Ransom and Thomas E. Fitzgerald (David McClure, Joseph H. Choate, and William C. Roe, of counsel), for contestants.

VARNUM, S. This case was tried before Mr. Surrogate ARNOLD, but no decision was rendered by him before his retirement from office. Subsequently a motion was made, of which all persons having any interests had due notice, by which the matter was brought before me, as Judge ARNOLD'S successor, to complete the trial as unfinished business pending before my predecessor, in accordance with the practice suggested in Re Lawrence's Estate (Sur.) 58 N. Y. Supp. 597. This motion was opposed by the counsel for contestants, who insisted that the case should be tried before me de novo. After hearing long and able arguments of counsel, I held that I had full power to proceed with the determination of the case, and allowed the contestants an exception to my ruling. See In re Johnson's Will, 27 Misc. Rep. 167, 58 N. Y. Supp. 601. Inasmuch as this case was not tried before me, an especially careful examination of the testimony taken on the trial (more than 1,175 typewritten pages) has been necessary.

The testatrix, Mary Johnson, died March 10, 1897, being then about 56 years old, leaving an estate estimated at about $50,000 of per-

sonalty and $500,000 of realty. She was a woman of fair intelligence, but of humble origin and little education, and coarse of manners and speech, who had emigrated from Ireland when quite young, and who seems, from the evidence, to have been, from about the time of her arrival in this country, indifferent, if not even hostile, in feeling towards nearly all of her blood relatives, on account of the treatment she received from them when she came to the United States. There was, however, one exception,—her brother, Stephen Lovejoy, who predeceased her in 1893, and from whom she inherited the bulk, if not all, of her large fortune. Subsequent to his death, and on February 14, 1895, she executed a will, which is in evidence herein, and is substantially like that now presented for probate, except as to the residuary legatees and devisees, who are, however, in both wills, charitable and religious corporations. The will now under consideration was executed April 25, 1896, and a codicil thereto on the day of her death, March 10, 1897. Legacies are given by the will to several Roman Catholic priests, and to a number of relatives, friends, and servants; and the residue of the estate is given to the executors in trust to convert into money, and apply the same (including proceeds of real estate) to the payment of the legacies above referred to, as well as many others subsequently specified,—principally to Catholic charitable and religious societies. The residue is to go, one-third each, to St. Joseph's Seminary and the Church of All Saints, and one-ninth each to the Roman Catholic Orphan Asylum, the Roman Catholic Protectory, and the Mission of the Immaculate Virgin. The Reverend James W. Power and Peter Condon were named as executors. The codicil makes several unimportant changes in the will, confirms a deed of real estate before given to Father Power, and then provides for the substitution of Daniel J. Quinlan in the place of Peter Condon as executor. The probate of the will and codicil was contested by sundry of the heirs at law and next of kin of the deceased upon the usual grounds, and the codicil alone by Peter Condon, the executor who was superseded by its provisions.

Having carefully considered the voluminous evidence and the able briefs of the various counsel, I do not deem it necessary to make any analysis of the testimony, but merely to give my conclusions upon the points at issue. I find that the testatrix had full testamentary capacity at the time that the will in question was made, and that said will was duly executed in conformity to law. I further find that it was not executed under any undue influence. Bearing clearly in mind the principles laid down in Marx v. McGlynn, 88 N. Y. 357, and other cases to similar effect, I can still find no satisfactory evidence of the abuse by Father Power, or any one else, of any confidential relations. The mere fact, moreover, that the testatrix was not considered a very devout or religious woman, that she sometimes indulged in profane and irreligious language, does not convince me that her charitable and religious bequests were made under any undue influence. It is a well-known fact that many people, and especially those in the same class in life to which the testatrix, by origin, education, and condition, belonged, even though they may not themselves live up strictly to the teachings of their religion, are nevertheless

strongly influenced in life, and in any testamentary disposition that they may make, by their traditional or sentimental associations with the church in which they have been brought up, and especially in cases of testamentary disposition where there are none of their own kith and kin in whom they are especially interested, which was certainly the fact in the case now under consideration.

In connection with the codicil, a question arises with regard to certain testimony of Father Power received under objection and exception of contestants other than the contestant Condon, and as to which decision, upon a motion to strike out, was reserved by Surrogate ARNOLD. I have disregarded this testimony, and I grant the motion of Mr. McClure, as set forth in detail in the memorandum submitted by him, to strike out the same, upon the grounds therein contained. I am, however, of opinion that, if this testimony had been allowed to stand, it would have tended to sustain, rather than overthrow, the codicil. I find, also, as to the codicil, that it was not executed under any undue influence. The testimony reveals reasons quite sufficient, in my judgment, for the change made by the testatrix in one of her executors. The question as to testamentary capacity is more serious in this case than in that of the will, as the codicil was executed on the day of Mrs. Johnson's death. Learned experts on each side give diametrically opposite opinions, as usual, as to the probability of her testamentary capacity in view of her bodily ailments. I am of opinion, after most careful consideration of their views, and of the other testimony as to the conversations and actions of the testatrix on that day, that she was quite in possession of all of her faculties, and understood perfectly, and was quite competent to understand, the action that she was taking. The will and codicil will therefore be admitted to probate.

Probate granted.